1  CHAO "WENDY" WANG (SBN 289325)
2  wendy.wang@bakerbotts.com
   BAKER BOTTS LLP
3  1001 Page Mill Road, Bldg. One, Ste. 200
   Palo Alto, CA 94304
4  Telephone: +1.650.739.7514
   JOSE VILLARREAL (*pro hac vice*)
5  jose.villarreal@bakerbotts.com
   LANCE GOODMAN (*pro hac vice*)
6  lance.goodman@bakerbotts.com
   BAKER BOTTS L.L.P.
7  401 South 1st Street, Suite 1300
   Austin, TX 78704
8  Telephone: +1.512.322.2500
9
   [additional counsel on signature page]
10
11 *Counsel for Defendant Salesforce, Inc.*

12                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13                 **SAN FRANCISCO DIVISION**

14

15 **VILOX TECHNOLOGIES, LLC, and**        **SALESFORCE, INC.'S NOTICE OF**
   **VILOX, LLC,**                          **MOTION AND MOTION FOR**
16                                          **SANCTIONS**
                              **Plaintiffs,**
17                                          Case No.: 3:23-cv-05047-AMO
            v.
18                                          **Date**:        Nov. 20, 2025
   **SALESFORCE, INC.,**                    **Hearing Time**: 2:00pm
19                                          **Courtroom**:   10, 19th Fl (San Francisco)
                              **Defendant.** **Judge**:       Araceli Martinez-Olguin
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................... 1

II.  STATEMENT OF ISSUES ..................................................................................... 1

III.  FACTUAL BACKGROUND .................................................................................. 1

    A.  Vilox's Delays and Shell Game Drives Up Costs for Salesforce ........................... 1

    B.  Vilox's Attorneys are Complicit in Vilox's Conduct .............................................. 3

IV.  Legal Standard ....................................................................................................... 4

    A.  The Court's Jurisdiction Over Sanctions, Including Non-Parties............................ 4

    B.  The Court Has Power to Award Excess Costs, Expenses, and Attorneys' Fees .... 5

V.  Argument ................................................................................................................ 6

    A.  Sanctions are Warranted Against Vilox and Dr. De Bellis Under the Court's Inherent Authority ................................................................................................. 6

        1.  Vilox Engaged in a Litigation Campaign Designed to Prevent an Outcome on the Merits................................................................................ 6

        2.  Since the Filing of the FAC, Vilox Litigated in Bad Faith ......................... 7

        3.  Dr. De Bellis Should Be Held Personally Accountable for Vilox's Conduct ...................................................................................................... 8

    B.  Sanctions are Warranted Against the Vilox Attorneys Under Both the Court's Inherent Authority and 28 U.S.C. § 1927 ............................................................. 10

        1.  The Vilox Attorneys Unreasonably and Vexatiously Multiplied Proceedings by Filing the FAC .............................................................. 10

        2.  Other Conduct by the Vilox Attorneys Demonstrates Bad Faith Sufficient to Warrant Sanctions under Section 1927 and the Court's Inherent Power ......................................................................................... 11

    C.  The Sanctions Should Include Dismissal with Prejudice ..................................... 13

    D.  The Sanctions Should Also Include Attorney's Fees Incurred By Salesforce Since the FAC Was Filed.................................................................................... 14

        1.  Salesforce's Fees are Reasonable ............................................................ 15

            a.  Baker Botts' Hourly Billed Rates Are Reasonable....................... 15

            b.  Baker Botts' Billed Hours Are Reasonable ................................. 16

VI.  CONCLUSION...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*B.K.B. v. Maui Police Dep't,*
  276 F.3d 1091 (9th Cir. 2002) ...........................................................................5, 12

*Bituminous Cas. Corp. v. Garcia,*
  223 F.R.D. 308 (N.D. Tex. 2004) ............................................................................14

*Blum v. Stenson,*
  465 U.S. 886 (1984).....................................................................................15, 16

*Carl Zeiss Vision International GmbH, v. Signet Armorlite, Inc.,*
  No. 3:07-cv-00894-DMS 2009 WL 10668700 (S.D. Cal. Sept. 16, 2009) .........................6, 9

*Carson v. Billings Police Dep't,*
  470 F.3d 889 (9th Cir. 2006) ...........................................................................16, 17

*Chalmers v. City of Los Angeles,*
  796 F.2d 1205 (9th Cir. 1986), *opinion amended on denial of reh'g,* 808 F.2d 1373 (9th Cir. 1987) ...................................................................................................15, 17

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991)..............................................................................................5

*Christian v. Mattel, Inc.,*
  286 F.3d 1118 (9th Cir. 2002) ...............................................................................13

*Coop. Ent., Inc. v. Alibaba Cloud US LLC,*
  No. 25-cv-01842-LJC, 2025 WL 1343592 (N.D. Cal. May 8, 2025)................................11, 12

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384 (1990)............................................................................................4

*Env't World Watch, Inc. v. Walt Disney Co.,*
  No. CV 09-4045-DMG, 2016 WL 11756799 (C.D. Cal. May 11, 2016)..............................5, 8

*Eon-Net LP v. Flagstar Bancorp,*
  653 F.3d 1314 (Fed. Cir. 2011).............................................................................13

*Fed. Sav. & Loan Ins. Corp. v. Ferrante,*
  364 F.3d 1037 (9th Cir. 2004) ................................................................................4

*Fink v. Gomez,*
  239 F.3d 989 (9th Cir. 2001) ............................................................................5, 7, 8

*Focally LLC v. Win Elements, LLC*,
 No. 5:21-cv-02105-JGB, 2022 WL 17078436 (C.D. Cal. Nov. 2, 2022), *vacated on other
 grounds* 2023 WL 9743749 (C.D. Cal. July 21, 2023) ........................................................... 7

*Forest Labs., Inc. v. Abbott Labs.*,
 339 F.3d 1324 (Fed. Cir. 2003) ............................................................................................... 7

*Goodyear Tire & Rubber Co. v. Haeger*,
 581 U.S. 101 (2017) ........................................................................................................... 6, 14

*Gorbach v. Reno*,
 219 F.3d 1087 (9th Cir. 2000) ............................................................................................... 13

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ......................................................................................................... 15, 17

*Holgate v. Baldwin*,
 425 F.3d 671 (9th Cir. 2005) ................................................................................................... 4

*In re Itel Sec. Litig.*,
 791 F.2d 672 (9th Cir. 1986) ................................................................................................... 4

*In re Keegan Mgmt. Co., Sec. Litig.*,
 78 F.3d 431 (9th Cir. 1996) ............................................................................................... 5, 11

*In re M/V Peacock on Complaint of Edwards*,
 809 F.2d 1403 (9th Cir. 1987) ............................................................................................... 14

*In re Personalweb Techs., LLC, Pat. Litig.*,
 No. 18-md-02834-BLF, 2021 WL 796356 (N.D. Cal. Mar. 2, 2021) ................................. 5, 15

*In re Rainbow Magazine, Inc.*,
 77 F.3d 278 (9th Cir. 1996) ..................................................................................................... 4

*Indiezone, Inc. v. Rooke*,
 720 F. App'x 333 (9th Cir. 2017) ......................................................................................... 4, 7

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
 Case No. 5:13-cv-01708-HRL, 2014 WL 5795545 (N.D. Cal. Nov., 6, 2014) ...................... 7

*K.C. ex rel. Erica C. v. Torlakson*,
 762 F.3d 963 (9th Cir. 2014) ................................................................................................... 4

*Kilopass Tech., Inc. v. Sidense Corp.*,
 82 F. Supp. 3d 1154 (N.D. Cal. 2015) ................................................................................... 15

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
 No. 24-cv-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025) ......................... 3, 11, 12

*Law Offs. of Bruce Altschuld v. Wilson*,
    632 F. App'x 321 (9th Cir. 2015) ...........................................................................4

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ...............................................................................8, 9

*Maloney v. T3Media, Inc.*,
    No. CV 14-05048-AB, 2015 WL 3879634 (C.D. Cal. May 27, 2015) ...............................16

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)................................................................................15

*Maxwell v. Kaylor*,
    No. 18-cv-06121-NC, 2022 WL 1123199 (N.D. Cal. Mar. 16, 2022) .........................4, 15

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
    210 F.3d 1112 (9th Cir. 2000) ...............................................................................5

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) .............................................................................................15

*QuickLogic Corp. v. Konda Techs., Inc.*,
    No. 21-cv-04657-EJD, 2025 WL 1507097 (N.D. Cal. May 27, 2025), *amended* 2025 WL
    1918843 (N.D. Cal. July 11, 2025)...........................................................................16

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) .............................................................................................5

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005) ...............................................................................10

*Thompson v. Am. Home Assurance Co.*,
    95 F.3d 429 (6th Cir. 1996) ..................................................................................14

*Trenier v. Host Int'l, Inc.*,
    No. CV 13-07008 BRO, 2014 WL 12703681 (C.D. Cal. Oct. 8, 2014)...........................17

*Upstream Holdings, LLC v. Brekunitch*,
    No. 2:22-cv-03513-MCS, 2024 WL 4868339 (C.D. Cal. Apr. 22, 2024) ..........................13

**STATUTES**

28 U.S.C. § 1927....................................................................................1, 5, 10, 11, 13, 14, 15

35 U.S.C. 281.........................................................................................................10

35 U.S.C. § 281.......................................................................................................10

35 U.S.C. § 1927.................................................................................................1, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 60................................................................................................................13

Fed. R. Civ. P. 60(b)(3).......................................................................................................13

Federal Rule of Civil Procedure 61 .....................................................................................14

Local Rule 11-3(c)................................................................................................................12

Model Rules of Prof. Conduct R. 1.4 (2023).......................................................................12

Rule 41..................................................................................................................................14

Rule 41(A)(1)(a)(i).................................................................................................................3

Rule 60(b)(1).........................................................................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 23, 2025, or as soon as the matter may be heard in Courtroom 10, 19th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Judge Araceli Martinez-Olguin presiding, Defendant Salesforce, Inc. ("Salesforce") will hereby move the Court for sanctions in the present lawsuit.

Defendant Salesforce, Inc. ("Salesforce") will and hereby does move this court pursuant to Civil L.R. 7-8 to grant sanctions against Plaintiffs Vilox, LLC and Vilox Technologies, LLC (collectively, "Vilox") and James L. De Bellis ("Dr. De Bellis") pursuant to the Court's inherent power. Additionally and alternatively, Salesforce will and hereby does move this court pursuant to Civil L.R. 7-8 to grant sanctions against Vilox's attorneys William Ramey of Ramey LLP, and Jennifer Ishimoto of Banie & Ishimoto LLP (collectively, the "Vilox Attorneys") pursuant to 28 U.S.C. § 1927 and/or the Court's inherent power.

Salesforce's motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; all pleadings and papers on file in this action; and such other and further matters as the Court may consider.

## STATEMENT OF RELIEF REQUESTED

Salesforce respectfully requests that the Court award sanctions against Vilox and Dr. De Bellis pursuant to the Court's inherent power. Additionally or alternatively, Salesforce respectfully requests that the Court award sanctions against the Vilox Attorneys pursuant to 28 U.S.C. § 1927 and/or the Court's inherent power. Salesforce also respectfully requests that the Court retain jurisdiction to (1) adjust the amount of sanctions awarded based on future events and determinations in this case (including, for example, the conduct of Vilox and the Vilox Attorneys in defending this motion that result in Salesforce to incur excess fees and costs) and (2) enforce the payment of sanctions.

DATED: August 22, 2025

**BAKER BOTTS LLP**

By: */s/ Chao "Wendy" Wang*
Chao "Wendy" Wang (SBN 289325)

*Counsel for Defendant Salesforce, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Vilox has engaged in a consistent pattern of bad conduct that has needlessly prolonged this litigation and increased costs for Salesforce. Vilox turned this litigation into a shell game—shuffling patent ownership among entities and its CEO, concealing transfers, and filing pleadings it knew lacked standing—all to delay resolution and drive the costs up for Salesforce. These tactics, coupled with repeated requests for improper extensions, *ex parte* communications on the eve of a hearing, and bad-faith settlement negotiations, reflect conduct far from zealous advocacy. The Vilox Attorneys enabled and amplified this abuse by filing a frivolous amended complaint, misrepresenting *pro hac vice* admissions, and disregarding this Court's rules. Sanctions are therefore warranted against Vilox and Dr. De Bellis under the Court's inherent power. Sanctions are also warranted against the Vilox Attorney's under 28 U.S.C. § 1927 and the court's inherent power. Both Vilox and its counsel should be held accountable for litigating in bad faith.

## II.    STATEMENT OF ISSUES

1.    Whether the Court should grant sanctions against Vilox and Dr. De Bellis pursuant to the Court's inherent power.

2.    Whether the Court should grant sanctions against the Vilox Attorneys pursuant to 35 U.S.C. § 1927 and the Court's inherent power.

3.    Whether the Court should retain jurisdiction to (1) adjust the amount of sanctions awarded based on future events and determinations in this case and (2) enforce the payment of sanctions.

## III.    FACTUAL BACKGROUND

### A.    Vilox's Delays and Shell Game Drives Up Costs for Salesforce

Vilox filed the present case on December 5, 2022 in the Western District of Texas, which was subsequently transferred to this Court in September of 2023. ECF 1, 44. The Vilox entities are single-

member LLCs owned and operated by their President and CEO, Dr. Joseph De Bellis. ECF 103 at 2. While Vilox, LLC and Vilox Technologies, LLC were both named as plaintiffs, it is Salesforce's understanding that Vilox LLC—one of the two Plaintiffs—never had any legal interest in the Asserted Patents. And before this Court ever retained jurisdiction over this case, Vilox again concealed the ownership of the Asserted Patents by transferring them to Dr. De Bellis. ECF 95 (asserted patents were transferred on May 30, 2023). Throughout this litigation Vilox has represented at various instances that one or more of Vilox, LLC, Vilox Technologies, LLC, and/or Dr. De Bellis are owners in the Asserted Patents. *See, e.g.*, ECF 1; ECF 41, ECF 95. But Vilox has never made clear the terms of these transfers or whether any "side agreements" exist between Vilox and Dr. De Bellis. ECF 43 at 4-5. That Salesforce ***still*** does not have certainty on who owns the patents that Salesforce allegedly infringed after this many years of litigation, speaks to the utter disarray that plaintiffs and their attorneys have created over the course of this entire case.

Shortly after the case was transferred to the Northern District of California (ECF 44), Salesforce filed a motion to dismiss arguing that the patents failed to recite eligible subject matter and Vilox had failed to state a claim for infringement. ECF 67. The Court granted the motion to dismiss on both grounds but granted Vilox leave to amend. ECF 82.

Vilox subsequently filed a First Amended Complaint ("FAC") naming both Vilox entities as a plaintiff, even though Vilox knew and had represented to this Court that neither entity had owned the patents for over a year. ECF 86. The FAC substantially copied from materials in Vilox's briefing that the Court had already considered and rejected in deciding Salesforce's motion to dismiss. Salesforce spent additional resources preparing a motion to dismiss the FAC, which was subsequently vacated when Dr. De Bellis submitted an improper *ex parte* communication to the Court just days before the hearing. ECF 87, 92.

It became increasingly clear during this period that Dr. De Bellis was substantially involved in this litigation. Dr. De Bellis filed declarations alongside nearly every Vilox filing. *See* ECF 77-1, 86-1, 88-2. Vilox also continuously delayed the proceedings by seeking numerous extensions to accommodate Dr. De Bellis's personal calendar. *See* ECF 72, 74 (seeking two-week extension to

respond to motion to dismiss due to "catastrophic damage to his residence"); ECF 83 (seeking 30-day extension to file amended complaint because Dr. De Bellis "is extremely busy with his medical practice"); ECF 104 (seeking 30-day extension to seek alternative counsel in part due to "summer vacation schedules"). Dr. De Bellis further entered an improper *ex parte* communication in which he indicated he intended to travel and participate in the motion to dismiss hearing, even though Dr. De Bellis is not a named party or an attorney of record. ECF 92. And Dr. De Bellis himself purportedly prepared and filed a motion to intervene and substitute as a *pro se* plaintiff, which this Court ultimately denied. ECF 96; *see also* ECF 102 (status report filed by Dr. De Bellis).

After the failed renewed motion to intervene and substitute (ECF 96, 103), this Court gave Vilox time to seek alternative counsel after another extension. ECF 103. During this period, counsel for Vilox and Salesforce communicated frequently in an attempt to settle the case. Villareal Decl. ¶¶ 27-32. The parties engaged in numerous discussions and agreed that Vilox would dismiss the case *with prejudice* and appeared to have reached an agreement on other terms. Villareal Decl. ¶¶ 29-32. While Salesforce was preparing an agreement memorializing the parties' agreed terms, Vilox blindsided Salesforce by unilaterally dismissing the case without prejudice pursuant to Rule 41(A)(1)(a)(i). ECF 107; Villareal Decl. ¶ 33.

### B. Vilox's Attorneys are Complicit in Vilox's Conduct

Vilox's counsel, Ramey LLP, contributed to the multiplication of proceedings in this case. At the outset, Mr. Ramey falsely represented to this Court on numerous filings that he had filed an application for pro hac vice admission. *E.g.*, ECF 86. This is just another example of a long line of cases in this District where Mr. Ramey has misrepresented his pro hac vice status. *See Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 917110, at *3-4 (N.D. Cal. Mar. 26, 2025). Ms. Ishimoto, who joined as counsel of record for Vilox in February 2025 (ECF 93), continued to sign papers filed with the Court that falsely suggested Mr. Ramey had obtained pro hac vice admission in this matter. *E.g.*, ECF 95.

Ramey LLP's malfeasance also contributed to the costs incurred by Salesforce: Mr. Ramey (or his co-counsel) signed numerous requests for extension papers that failed to comply with this

District's Local Rules and this Court's Standing Order (ECF 72, 74, 83, 104). This Court admonished Vilox for its repeated inability to meet these requirements. *See* ECF 73, 75. It is Ramey LLP's responsibility to ensure compliance with this Court's requirements. Ramey LLP also oversaw and signed the FAC, despite Mr. Ramey and Vilox's knowledge that neither plaintiff owned the patents and therefore had no standing to sue. And Ramey LLP filed the motion to dismiss without prejudice, while simultaneously representing to Salesforce that the parties had reached an agreement on a dismissal with prejudice. Villareal Decl. ¶¶ 30-33.

## IV.     Legal Standard

### A.      The Court's Jurisdiction Over Sanctions, Including Non-Parties

District courts have discretion to exercise ancillary jurisdiction over sanctions and fee disputes. *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 971 (9th Cir. 2014); *see also Law Offs. of Bruce Altschuld v. Wilson*, 632 F. App'x 321, 322 (9th Cir. 2015) ("It is . . . well established that a federal court retains ancillary jurisdiction over attorneys' fees disputes collateral to the underlying litigation.") (citing *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004) (collecting cases)); *Maxwell v. Kaylor*, No. 18-cv-06121-NC, 2022 WL 1123199, at *5 (N.D. Cal. Mar. 16, 2022) (explicitly retaining jurisdiction). "'[S]uch ancillary jurisdiction exists even after the underlying litigation has concluded.'" *Atschuld*, 632 F. App'x at 322 (quoting *K.C.*, 762 F.3d at 968; citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)). District courts also retain jurisdiction to award fees against attorneys even after they withdraw from a case. *See, e.g.*, *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("The fact that [counsel] was allowed to withdraw . . . does not protect him from sanctions based on a filing that he made before that withdrawal.") (citing *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986)). And district courts can exercise discretion to enforce attorneys' fees awards. *See, e.g.*, *Maxwell*, 2022 WL 1123199, at *5.

A Court can sanction a non-party under its inherent powers. *See, e.g.*, *Indiezone, Inc. v. Rooke*, 720 F. App'x 333, 337 (9th Cir. 2017); *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 282 (9th Cir. 1996) (acknowledging that sanctions can be "imposed against a nonparty and nonattorney under the court's inherent powers") (citation omitted). "'[T]o be subject to the Court's inherent power to

sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation; and, (2) substantially participate in the proceedings in which he interfered.'" *Env't World Watch, Inc. v. Walt Disney Co.*, No. CV 09-4045-DMG (PLAx), 2016 WL 11756799, at *3 (C.D. Cal. May 11, 2016) (citations omitted; collecting cases).

### B.    The Court Has Power to Award Excess Costs, Expenses, and Attorneys' Fees

Pursuant to 28 U.S.C. § 1927, a court may also order sanctions against an attorney, who "multiplies the proceedings in any case unreasonably and vexatiously[.]" Imposition of sanctions under this section requires a finding of bad faith. *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). "'Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent.'" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (citations omitted; collecting cases). Knowing or reckless conduct meets this subjective standard, but negligent conduct does not. *Pac. Harbor*, 210 F.3d at 1118.

A district court may also impose attorneys' fees under its inherent authority in order to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "[C]onduct that is 'tantamount to bad faith' is sanctionable." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002), *abrogation on other grounds recognized by Juarez v. Walmart Inc.*, (9th Cir. 2025) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). "'[A] finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous[] . . .'" *Id.* (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001)). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* (quoting *Fink*, 239 F.3d at 994).

"[A] 'causal connection' is required between the misbehavior and the legal fees imposed, which 'is most appropriately framed as a but-for test: The complaining party . . . may recover "only the portion of his fees that he would not have paid but for" the misconduct.'" *In re Personalweb Techs., LLC, Pat. Litig.*, No. 18-md-02834-BLF, 2021 WL 796356, at *3 (N.D. Cal. Mar. 2, 2021)

(quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017)). Courts "need not, and indeed should not, become green-eyeshade accountants . . . The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. Accordingly, a district court may take into account its overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Goodyear*, 581 U.S. at 110 (citations and quotations omitted).

## V.    Argument

An award of sanctions is proper based on the totality of the circumstances, given the lack of objective merit to Vilox and the Vilox's Attorneys conduct and improper tactics to prolong the case. Accordingly, Salesforce respectfully requests that the Court award sanctions incurred in litigating Vilox and the Vilox's Attorneys' improper tactics. Salesforce respectfully requests this Court sanction Vilox and Dr. De Bellis pursuant to the Court's inherent power, and additionally and alternatively sanction the Vilox Attorneys under 28 U.S.C. § 1927 and the Court's inherent authority. Salesforce also respectfully requests that the Court retain jurisdiction to enforce its sanctions order(s).

### A.    Sanctions are Warranted Against Vilox and Dr. De Bellis Under the Court's Inherent Authority

#### 1.    Vilox Engaged in a Litigation Campaign Designed to Prevent an Outcome on the Merits

From the outset, Vilox and Dr. De Bellis engaged in precisely the type of sanctionable conduct that the Court should deter: repeated and unwarranted patterns of delay, obfuscation, gamesmanship, and waste. Each of these individually and collectively unreasonably multiplied the proceedings and drove up costs for Salesforce, which did not choose to be brought in as a defendant in this case and yet expended significant time and resources trying to make sense of the chaos that Vilox, De Bellis, and the Vilox Attorneys created at each step. First, Vilox repeatedly shuffled patent ownership among Vilox, LLC, Vilox Technologies, LLC, and Dr. De Bellis without ever clarifying who owned the Asserted Patents or producing the transfer agreements. *See* ECF 41. Sanctions should be granted on this basis alone. *See Carl Zeiss Vision International GmbH, v. Signet Armorlite, Inc.*, No. 3:07-cv-00894-DMS 2009 WL 10668700, at *2 (S.D. Cal. Sept. 16, 2009) (finding sanctions warranted for

counsels "fail[ure] to conduct a reasonable investigation into their clients' standing."). Second, while Vilox was no doubt aware the Asserted Patents were invalid after the Court granted Salesforce's motion to dismiss (ECF 82), it filed the FAC naming plaintiff entities that Vilox now knew lacked standing. ECF 86. Forcing Salesforce to relitigate and this Court to adjudicate baseless claims is reckless, if not outright frivolous. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless."). Courts in this district have found litigation behavior exceptionally unreasonable when a party fails to conduct an adequate pre-filing investigation that supports its claim. *See, e.g.*, *IPVX Patent Holdings, Inc. v. Voxernet LLC*, Case No. 5:13-cv-01708-HRL, 2014 WL 5795545, at *6 (N.D. Cal. Nov., 6, 2014). Vilox's lack of diligence or investigation into ownership of the Asserted Patents is exceptionally unreasonable. These repeated filings forced Salesforce to expend resources briefing a second motion to dismiss that never should have been necessary. Likewise, Vilox's repeated requests for extensions—citing personal reasons ranging from home damage to vacation schedules—reflect a disregard for the Court's orders, time, and resources, and for the efficient progress of this case. Counsel compounded this recklessness by filing multiple requests that did not comply with this District's Local Rules or the Court's Standing Order, drawing admonishments from the Court, and further acts of frivolous filings by Vilox. *See* ECF 73, 75.

### 2.     Since the Filing of the FAC, Vilox Litigated in Bad Faith

"Where a court [issues] sanctions  pursuant to its inherent powers, some showing of bad faith is required." *Indiezone*, 720 F. App'x at 337 (citing *Fink*, 239 F.3d at 992-93). Vilox's actions clearly demonstrate an intent to harass or gain leverage over Salesforce rather than litigate the merits of the case in good faith. Dr. De Bellis's improper *ex parte* communication on the eve of Salesforce's motion to dismiss hearing was designed to derail the proceeding and was a deliberate attempt to manipulate the judicial process. This *ex parte* communication had the effect of delay and had the effect (intended or not) of further delaying the date of the motion to dismiss hearing and resolution on the merits, evincing bad faith tactics. *See Focally LLC v. Win Elements, LLC*, No. 5:21-cv-02105-JGB, 2022 WL 17078436, at *9 (C.D. Cal. Nov. 2, 2022) (finding sanctions warranted where defendant has

"presented arguments that are without merit" as a "strategic calculus to delay the proceedings and drive up the costs of litigation …in bad faith[.]"), *vacated on other grounds* 2023 WL 9743749 (C.D. Cal. July 21, 2023); *see also* *e* ECF 92.

Vilox has also repeatedly demonstrated bad faith motives while litigating this case. Bad faith may be inferred when a party knowingly advances a claim or filing for improper reasons. *See Fink*, 239 F.3d at 994. Vilox's repeated improper filings cannot be attributed to mere negligence. Instead, they reflect an intentional disregard for the truth and integrity of these proceedings, and ultimately bad faith by Vilox and Dr. De Bellis. Additionally, despite Vilox's unfair gamesmanship, Salesforce nevertheless engaged in good faith settlement discussions and agreed to dismiss the case with prejudice. Inexplicably and without notice, Vilox turned around and dismissed the case without prejudice, leaving Salesforce with significant wasted expenses.

These collective tactics are exactly the kind of litigation abuse that the Court's inherent authority is supposed to deter, and the Court should find that sanctions are warranted against Vilox under the Court's inherent power.

### 3. Dr. De Bellis Should Be Held Personally Accountable for Vilox's Conduct

While Dr. De Bellis remains a non-party (ECF 103), he, as CEO of Vilox, controls Vilox and has been intimately involved and interested in this litigation. Dr. De Bellis has both (1) a substantial interest in the outcome of the litigation; and, (2) substantially participated in the proceedings in which he interfered. *See Env't World Watch*, 2016 WL 11756799, at *3. Dr. De Bellis should be held personally accountable for his conduct and Vilox's conduct in this litigation. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

Dr. De Bellis has a substantial interest in the outcome of the litigation. As President and CEO of Vilox, Dr. De Bellis and Vilox share the same interest in this litigation: to enforce and uphold the validity of his patents. Indeed, in his motion to substitute parties (ECF 96-100), Dr. De Bellis was unable to identify any particular interest of his that differed from the Vilox plaintiff. *See* ECF 103 at 2 ("Dr. De Bellis is the President and CEO of Vilox Technologies, *see* ECF 100-3, and given that relationship, his interest in protecting the patents is aligned with that of his company").

1  Dr. De Bellis also substantially participated in and interfered with this litigation by repeatedly

2  insisting he be personally involved. This Court has previously recognized that Dr. De Bellis filed

3  declarations in nearly every filing Vilox submitted to this Court. *See* ECF 103 at 2 (citing ECF 77-1;

4  86-1; 88-2) ("Indeed, multiple filings in this case reflect the input Dr. De Bellis, without being joined

5  as a party, has had on the course of this litigation to date."); *see also* ECF 102 (status report filed by

6  Dr. De Bellis). Dr. De Bellis further dictated the speed of this case by requesting significant extensions

7  for his personal happenings. *See* ECF 72-75, 83, 104. Dr. De Bellis filed an *ex parte* communication

8  because he intended to participate in the motion to dismiss hearing. ECF 92. And Dr. De Bellis

9  reassigned the patents to himself during litigation in an improper attempt to intervene and substitute

10 as a *pro se* plaintiff, because he knew there were standing issues regarding the Asserted Patents. *See*

11 *Carl Zeiss Vision,* 2009 WL 10668700, at *2 (finding sanctions warranted where "Plaintiffs and their

12 counsel remained silent on the 'technical standing defect[.]'"). *see also* ECF 96. "Standing is not just

13 a 'technical' requirement: It 'is an essential and unchanging part of the case-or-controversy

14 requirement of Article III.'" *Carl Zeiss Vision,* 2009 WL 10668700, at *2 (citation omitted). Dr. De

15 Bellis's reluctance to be forthright with the muddled standing issues evinces bad faith. All have

16 resulted in significant delays in this case. ECF 103 at 4 ("This only magnifies the delay that has

17 already taken place in this litigation due to the purported assignment of the patents at issue from the

18 plaintiffs to Dr. De Bellis.")

19  Even though Dr. De Bellis is the President of Vilox and a named inventor of the Asserted

20 Patents, this is not typical behavior. Dr. De Bellis hired seasoned patent attorneys (*see* Section V.B.1,

21 *infra*) to defend his interests. Dr. De Bellis's disagreement over the strategy in this case does not

22 ultimately justify his significant involvement in this case. *See* ECF 103 at 3 (citation omitted) ("The

23 solution for any disagreement in litigation strategy is not intervention."). Ultimately Dr. De Bellis has

24 inserted himself rather than hire substitute counsel to defend his interests. He should now be held

25 personally accountable for his conduct and Vilox's conduct in this litigation. *See IDX Sys. Corp.*, 464

26 F.3d at 958. The Court should sanction Dr. De Bellis pursuant to this Courts' inherent power.

27

28

**B.    Sanctions are Warranted Against the Vilox Attorneys Under Both the Court's Inherent Authority and 28 U.S.C. § 1927**

Additionally, and alternatively, sanctions against the Vilox Attorneys are warranted under Section 1927 and the Court's inherent authority.

**1.    The Vilox Attorneys Unreasonably and Vexatiously Multiplied Proceedings by Filing the FAC**

Sanctions are warranted because the Vilox Attorneys proceeded to file the FAC without the necessary factual or legal basis. By filing the FAC on July 8, 2024, the Vilox Attorneys initiated another phase of this litigation which unreasonably and vexatiously prolonged this case for more than a year; Salesforce promptly filed a second motion to dismiss on July 29, 2024, but the Court *never had the opportunity to decide that motion on the merits* because of the numerous sideshows Vilox created. *See* ECF 92 (*ex parte* communication delaying hearing); ECF 96 (motion to intervene); ECF 104 (seeking extension of time).

The FAC lacked legal basis. The FAC alleged infringement of the Asserted Patents. *See* ECF 86. Adequate standing to assert patent infringement requires the named plaintiff to be the owner or exclusive licensee to the asserted patent. *See* 35 U.S.C. 281 ("A patentee shall have remedy by civil action for infringement of his patent."); *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) ("[I]f the patentee transfers all substantial rights under the patent, it amounts to an assignment and the assignee may be deemed the effective patentee under 35 U.S.C. § 281[.]"). But over a year before the FAC was filed, Vilox represented to this Court it no longer owned the Asserted Patents. ECF 41 at 5. Vilox was clearly aware of this requirement: in the original complaint Vilox plainly identified it "owns the [Asserted Patents] by Assignment." ECF 1 ¶¶ 11, 21. In the FAC, these paragraphs are nearly identical, but the statements on ownership were removed. *Compare id.*, *with* ECF 86 ¶¶ 11, 30. Vilox alleged nowhere in the FAC that it was the owner of the Asserted Patents or that it had standing to sue. From an objective perspective, there is no factual basis in the FAC to support Vilox's claim for patent infringement.

The Vilox Attorneys cannot plead ignorance of the transfer of the patents to Dr. De Bellis: Mr. Ramey signed papers in June 2023 asserting that "Vilox Technologies, LLC, and Vilox, LLC

('Vilox') no longer has [sic] standing in this case because Vilox has transferred its rights to the patent at issue to inventor Dr. Joseph L. De Bellis." ECF 41. Mr. Ramey also signed both the Complaint and the FAC. *See* ECF 1, 86. Neither can Mr. Ramey plead ignorance of the standing requirements for asserting infringement. Mr. Ramey is a seasoned attorney that, as of earlier this year, was counsel of record in over 150 patent cases nationwide. *See Koji IP,* 2025 WL 917110, at *7. Rather, the omission of the ownership language in the FAC (ECF 86 ¶¶ 11, 30) suggests that not only did Mr. Ramey fail to perform a competent inquiry, but he knew (or should have known) the FAC was baseless and frivolous but proceeded anyway. The Vilox Attorneys filed the FAC in bad faith. *See In Re Keegan*, 78 F.3d at 436 ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.").

There is no dispute that, at the time the FAC was filed, all parties knew that Vilox did not own the Asserted Patents. Yet the Vilox Attorneys proceeded to file the FAC anyway. The filing of the FAC was done in bad faith, "unreasonably and vexatiously" multiplied these proceedings, and led to Salesforce to incur costs for an additional year defending this litigation. Attorney's fees are warranted under Section 1927 and the Court's inherent authority to compensate Salesforce for these fees incurred after the FAC was filed.

### 2. Other Conduct by the Vilox Attorneys Demonstrates Bad Faith Sufficient to Warrant Sanctions under Section 1927 and the Court's Inherent Power

The Court should find the Vilox Attorney's repeated conduct constitutes bad faith sufficient to warrant sanctions. The Vilox Attorneys have participated in and perpetuated Vilox's litigation conduct. From the onset, Mr. Ramey has appeared as counsel on pleadings in this matter as or "*pro hac vice* anticipated." *E.g.*, ECF 77. Yet despite this case pending in this district for over two years, Mr. Ramey never filed a *pro hac vice* application. This case is just another example of Mr. Ramey frequent disregard for this District's *pro hac vice* requirements. *See, e.g., Koji IP*, 2025 WL 917110, at **3-4 (taking notice that Mr. Ramey applied for pro hac vice status in only ten of fifty-six cases he has filed in this District); *see also Coop. Ent., Inc. v. Alibaba Cloud US LLC*, No. 25-cv-01842-LJC, 2025 WL 1343592, at *3 (N.D. Cal. May 8, 2025) (denying Mr. Ramey's second *pro hac vice* application because the prior application included false statements and representations to the court

about the number of times he had been admitted that year). The sheer volume of cases in which Mr. Ramey has flaunted these requirements suggests that Mr. Ramey knew or should have known that he was engaging in bad faith litigation tactics. *Id.* at 3 ("These issues, however, reflect a pattern of conduct across several cases, with Ramey having made the same sort of false declarations in at least two previous cases (*CyboEnergy v. Duracell Power*, No. 24-cv-08891-LJC; *WirelessWerx v. Lyft,*, No. 24-cv-01144-VKD; *see* ECF No. 15 at 1 n.1)"). And at least one judge has found that Mr. Ramey's frequent appearances in this District demonstrate that he "regularly practice[s] law in California" and therefore disqualified him from seeking *pro hac vice* admission. *See Koji*, 2025 WL 917110, at *17 (citing Civil Local Rule 11-3(c)). Mr. Ramey's unauthorized practice of law in this case is "tantamount to bad faith" and sanctionable. *B.K.B.*, 276 F.3d at 1108.

Ms. Ishimoto, who joined the case in January, has perpetuated Mr. Ramey's deceit by signing papers representing Mr. Ramey's *pro hac vice* status. *E.g.*, ECF 95. This District has previously expressed concern about Ms. Ishimoto's similar conduct. *See Coop. Ent., Inc.*, 2025 WL 1343592, at *3 ("The Court is also concerned by Plaintiff's counsel Jennifer Ishimoto's role in the filing of the false pro hac vice application, and by her filing documents drafted by Ramey or his law firm without any appearance by that firm in the case."). Ms. Ishimoto's complicity in Mr. Ramey's conduct further warrants a finding of bad faith in this case.

The Vilox Attorneys have shown further disregard for the Court's rules in this case. Vilox sought numerous extensions in this case. ECF 72-75, 83, 104. Not a single one complied with this District's Local Rules and this Court's Standing Order. This is despite this Court's warnings to comply with the rules. *See* ECF 73, 75. Mr. Ramey has also openly disregarded this Court's order that, until substitute counsel is obtained, "Ramey LLP is expected to honor its ethical obligations while it remains counsel of record before this Court." ECF 103 at 3 (denying Ramey LLP's request to withdraw). For example, just days ago Mr. Ramey again represented that "Dr. De Bellis has never been a client of mine and as he owns the patents, it is confusing.[1]" Ex. B (Email correspondence

---

[1] Mr. Ramey appears to be suggesting he does not represent Dr. De Bellis in his individual capacity. Maybe so. But Mr. Ramey represents Vilox, and it is Mr. Ramey's ethical obligation to represent Vilox's CEO and keep him informed of proposed settlement offers. *See, e.g.*, Model Rules of Prof. Conduct R. 1.4 (2023).

between J. Villareal and W. Ramey); *see also* Ex. C ("I do not represent or control Dr. De Bellis"). Such repeated and blatant disregard of the rules warrants appropriate sanctions under the Court's inherent powers. *See Upstream Holdings, LLC v. Brekunitch*, No. 2:22-cv-03513-MCS (RAOx), 2024 WL 4868339, at *2 (C.D. Cal. Apr. 22, 2024) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing.") (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002)).

The Vilox Attorney's bad faith conduct further extends to the dismissal of the case. After the Court granted an extension for Vilox to retain substitute counsel (ECF 106), Mr. Ramey contacted counsel for Salesforce over email, voicemail, and telephone discussions to discuss terms of a settlement and dismissal with prejudice. Villareal Decl. ¶¶ 27-33. After representing to Salesforce that the parties had reached an agreement to dismiss the case with prejudice, the Vilox Attorneys dismissed the case without prejudice unbeknownst to Salesforce. Villareal Decl. ¶ 33. This deliberate reversal not only contradicted their prior assurances but also exemplifies the bad faith that has characterized Vilox's litigation strategy throughout the case. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327-28 (Fed. Cir. 2011) (holding that settlement tactics supported district court's finding of plaintiff's bad faith).

The Court should find that sanctions are warranted against the Vilox Attorneys under 28 U.S.C. § 1927 and this Court's inherent authority.

### C. The Sanctions Should Include Dismissal with Prejudice

Salesforce requests that this Court vacate the dismissal without prejudice (ECF 106) and properly dismiss this suit with prejudice. This relief is proper under the Court's inherent powers. *See Gorbach v. Reno*, 219 F.3d 1087, 1095 (9th Cir. 2000) ("Congress has confirmed the traditional inherent power of United States District Courts to vacate their own judgments.") (citing Fed. R. Civ. P. 60); *see also* Fed. R. Civ. P. 60(b)(3) ("[T]he court may relieve a party or its legal representative from a final judgment . . . for the following reasons: . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]").

1    This relief is also proper under Federal Rule of Civil Procedure 61. "Rule 60(b)(1) permits

2    relief from judgment because of 'mistake, inadvertence, surprise, or excusable neglect,' but that rule

3    requires the moving party to justify its actions, or to show that its mistake was unexpected and

4    unavoidable rather than careless." *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1405

5    (9th Cir. 1987) (citations omitted). There have been few cases analyzing the meaning of surprise in

6    the context of Rule 60(b)(1). *See Bituminous Cas. Corp. v. Garcia*, 223 F.R.D. 308, 312-13 n.7 (N.D.

7    Tex. 2004) (applying plain meaning of surprise: "Something that takes one by surprise; an unexpected

8    occurrence or event; anything unexpected or astonishing.") (quoting Oxford English Dictionary

9    Online (2d ed. 1989)); *see also Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir.

10   1996) (surprise was established when moving party "was unaware that a lawsuit had been filed until

11   after the default judgment had been entered."). Vilox's conduct in this case clearly satisfies the plain

12   meaning of surprise. Salesforce negotiated in good faith with Vilox over several days, which involved

13   both correspondence and phone calls. Salesforce understood from those conversations the parties had

14   reached an agreement on dismissal, and was actively preparing paperwork constituting a dismissal

15   with prejudice. That same day, Vilox surprised Salesforce by filing the dismissal without prejudice

16   under Rule 41. Villareal Decl. ¶ 33. Salesforce negotiated in good faith, and the subsequent actions

17   were unexpected, unavoidable, and further warrant vacating this case under Rule 60(b)(1). *See In re

18   M/V Peacock*, 809 F.2d at 1405.

19
20       **D.     The Sanctions Should Also Include Attorney's Fees Incurred By Salesforce Since
                  the FAC Was Filed**

21       Under Section 1927, the Court may award attorney's fees "reasonably" incurred due to the

22   conduct. 28 U.S.C. § 1927. *Goodyear*, 581 U.S. at 107–09. Salesforce does not request all the fees

23   and costs it expended; rather, it merely requests "those attorney's fees incurred because of the

24   misconduct at issue." *Id.* at 108.

25       Accordingly, Salesforce requests that this Court award its reasonable attorney fees incurred

26   since the FAC was filed under its inherent authority or Section 1927. Salesforce also respectfully

27
28

requests that the Court explicitly retain jurisdiction to enforce its sanctions orders. *See generally Maxwell*, 2022 WL 1123199.

### 1.    Salesforce's Fees are Reasonable

To determine reasonable fees, courts frequently "looks to the lodestar amount, which is presumptively reasonable." *In re Personalweb Techs.*, 2021 WL 796356, at *5 (citations omitted; collecting cases). "The lodestar calculation requires examination of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.* (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)). "[W]hile the lodestar amount provides guidance, '[t]here is no precise rule or formula for making these determinations.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "'The court necessarily has discretion in making this equitable judgment.'" *Id.* at *16 (quoting *Hensley*, 461 U.S. at 437).

In establishing a reasonable hourly rate, courts in this district have considered such factors as: "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015) (citations omitted; collecting cases). "Where . . . a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[].'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988)  (quoting *Hensley*, 461 U.S. at 435).

### a.   Baker Botts' Hourly Billed Rates Are Reasonable

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Based on the prevailing market rate, Baker Botts' hourly rates for this matter are reasonable when compared to similar professionals. *See QuickLogic Corp. v. Konda Techs., Inc.*, No. 21-cv-04657-EJD, 2025 WL 1507097, at *2 (N.D. Cal. May 27, 2025) ("Given the reputation of Baker Botts

and the qualifications of the law firm's attorneys, the Court finds the rates to be 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"), *amended* 2025 WL 1918843 (N.D. Cal. July 11, 2025) (citing *Blum*, 465 U.S. at 895 n.11). Because Salesforce has a longstanding client relationship with Baker Botts, Baker Botts provided Salesforce with a discount on the firm's standard billing rates and written off charges as appropriate. Villareal Decl. ¶ 24.

The standard billing rate for the timekeeping attorneys on this matter range from ███ – ██████ for partners, and ███████ for associates. Villareal Decl. ¶¶ 8-20. These rates are comparable to the amount calculated using the reported billing rates in the AIPLA Report, which provides insights on the rates charged by lawyers in patent litigation disputes. Villareal Decl. ¶¶ 21-23 (citing Ex. A (AIPLA 2023 Report)). Salesforce is not seeking reimbursement of any fees for work done by Baker Botts' legal secretaries or paralegals.

As an additional indicator of Baker Botts' reasonable rates, Salesforce has paid, and continues to pay, the invoices reflecting Baker Botts' effective billing rates. Villareal Decl. ¶ 26; *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("That a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market."); *Maloney v. T3Media, Inc.*, No. CV 14-05048-AB (VBKx), 2015 WL 3879634, at *5 (C.D. Cal. May 27, 2015) ("And, while not a perfect measure, the fact that Defendant paid the rates for which they now seek reimbursement is evidence the rates are reasonable because the actual rate that the attorney can command in the market is itself highly relevant proof of the prevailing community rate.") (cleaned up; citation omitted).

### b. Baker Botts' Billed Hours Are Reasonable

Among attorney timekeepers, Baker Botts billed a total of ██████ from July 8, 2025 (when the FAC was filed) through August 8, 2025 (when the case was dismissed). All of those hours were both necessary and reasonable. "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers*, 796 F.2d at 1210 (citing *Hensley*, 461 U.S. at 433); *Trenier v. Host Int'l, Inc.*, No. CV 13-07008 BRO

(JEMx), 2014 WL 12703681, at *3 (C.D. Cal. Oct. 8, 2014) (citing *Carson*, 470 F.3d at 891). Upon request, Salesforce will furnish any time records to the Court necessary to justify the expended hours.

The procedural history of this case demonstrates that all the hours billed in this case were necessary and reasonable. Specifically, Vilox asserted two patents in this litigation against different Salesforce products. Over the next year, the parties litigated numerous issues, including a motion to dismiss the FAC, a renewed motion to intervene/substitute, and numerous extension and case management requests from Vilox. Villareal Decl. ¶ 5. The parties also prepared for at least one hearing on the motion to dismiss, which was later taken off calendar. ECF 92.

Accordingly, the Court should recognize that the rates and hours billed by Baker Botts are reasonable, and award Salesforce its attorneys' fees.

## VI.     CONCLUSION

For the foregoing reasons, Salesforce respectfully requests that this Court grant its motion for sanctions. Salesforce also respectfully requests that the Court retain jurisdiction to (1) adjust the amount of sanctions awarded based on future events and determinations in this case (including, for example, the conduct of Vilox and the Vilox Attorneys in defending this motion that result in Salesforce to incur excess fees and costs) and (2) enforce the payment of sanctions.

DATED: August 22, 2025            **BAKER BOTTS L.L.P.**

By: */s/ Chao "Wendy" Wang*
     CHAO "WENDY" WANG (SBN 289325)
     wendy.want@bakerbotts.com
     1001 Page Mill Road, Bldg. One, Ste. 200
     Palo Alto, CA 94304
     Telephone: +1.650.739.7514

     JOSE VILLARREAL (*pro hac vice*)
     jose.villarreal@bakerbotts.com
     LANCE GOODMAN (*pro hac vice*)
     lance.goodman@bakerbotts.com

401 South 1st Street, Suite 1300
Austin, TX 78704
Telephone: +1.512.322.2500

NICK BANIEL (SBN 330193)
nick.baniel@bakerbotts.com
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: +1.415.291.6200

*Counsel for Defendant Salesforce, Inc.*

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on August 22, 2025, I caused the foregoing document to be served in the
following in the manner indicated:

3

William P. Ramey, III                    *VIA ELECTRONIC MAIL AND ELECTRONIC FILING*

4
wramey@rameyfirm.com
RAMEY LLP

5
5020 Montrose Blvd., Suite 800
Houston, TX 77006

6
Telephone; +1.713.426.3923

7
*Counsel for Plaintiffs Vilox Technologies,
LLC and Vilox LLC*

8

9

10                              */s/ Chao "Wendy" Wang*
                                   Chao "Wendy" Wang (SBN 289325)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28